**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | **3:16-CR-143** |
| **v.** : | |
| : | **(JUDGE MANNION)** |
| **LOUIS ELMY,** : | |
| **Defendant** : | |

**MEMORANDUM**

**I.   BACKGROUND**

On May 15, 2020, defendant Louis Elmy, an inmate at FCI-Gilmer Satellite Camp, Glenville, West Virginia, filed, *pro se*, a Motion for Compassionate Release and request for Release to Home Confinement seemingly pursuant to the CARES Act, and the guidelines set forth in the March 26, 2020 and April 3, 2020 Memoranda issued by Attorney General Barr to the BOP regarding the Act. (Doc. 57). Elmy also indicates that his motion is one for compassionate release under 18 U.S.C. §3582(c)(1)(A), based on the COVID-19 pandemic and the alleged risk he may suffer severe complications if he contracts the virus due to his underlying conditions of autoimmune disease, high blood pressure and "leaky left heart valve." (Doc. 57, Ex. A). In his motion, Elmy stated that he submitted a request to Warden Hudgins for Compassionate Release to home confinement under the

1

CARES Act and the First Step Act of 2018 due to the COVID-19 pandemic on April 9, 2020. He attached a copy of his request to his motion. (Id.). Elmy also stated that he waited for 30 days after he submitted his request to the Warden but did not get a response, and that this gives the court jurisdiction over his motion.

On May 18, 2020, the court directed the government to file a response to Elmy's motion. (Doc. 58).

On May 26, 2020, the government filed its brief in opposition to Elmy's motion with attached Exhibits. (Docs. 59, 59-1 & 59-2). Its Ex. 1 is another copy of Elmy's April 9, 2020 request to Warden Hudgins for emergency release to home confinement due to the COVID-19 pandemic. Exhibit 2 is a copy of Warden Hudgins' timely April 17, 2020 response denying Elmy's "Inmate Request to Staff Member" in which he requested consideration for a Reduction in Sentence/Compassionate Release alleging extraordinary and compelling circumstances due his "concern about being potentially exposed to, or possibly contracting, COVID-19." The Warden stated that this "does not currently warrant an early release from [Elmy's] sentence." The Warden also advised Elmy that "[i]f you are not satisfied with this response to your request, you may commence an appeal of this decision via the administrative remedy process by submitting your concerns on the appropriate form (BP-9) within 20 days of receipt of this response." (Doc. 59-2).

In his reply brief filed on June 4, 2020, Elmy alleges that the first time he saw the Warden's April 17, 2020 response to his request was on May 29,

2020 when he received a copy of the government's opposition brief with its Exhibits. Thus, Elmy contends that this is why he told the court that before he filed his instant motion he waited 30 days after he filed his request for compassionate release with the Warden and received no response.

Elmy contends that he has satisfied the procedural requirements for judicial review of his request for compassionate release since he has served over 50% of his sentence, since he is a non-violent offender and classified as a minimum offender with no violence in his history, and since his overall inmate assessment is a "+1 (minimum)." He states that he has also demonstrated "extraordinary and compelling reasons" for the court to order the BOP to immediately release him to home confinement based on his age of 55, (DOB 12/02/1964), his medical conditions, i.e., autoimmune deficiency, hypertension and heat condition, and based on "this deadly virus COVID-19" and the fact that "social distancing is impossible in a prison setting." (Doc. 60). Elmy attached his BOP Custody Classification Form to his reply brief to support his stated contentions, as well as his June 2, 2020 Individualized Reentry Plan which indicates that his projected release date is May 23, 2022, that he requires chronic care for his medical conditions but they were "stable", and that he had no incident reports in the past 6 months. Elmy also indicates that his medical conditions are treated by medications. (*See also* PSR, Doc. 27 at 9). Also, despite his medical conditions, Elmy is able to work in the warehouse as a forklift operator, and he has no medical

restrictions to perform "regular duty" work, but he is restricted to no lifting over 15 pounds.

As such, Elmy requests the court to direct the BOP to release him from prison and direct that he serve the remainder of his sentence in home confinement.

On July 7, 2020, Elmy filed an addendum stating that if his motion is granted he will reside with his wife and two children in Wilkes-Barre, Luzerne County, Pennsylvania.[1] (Doc. 61).

Contrary to Elmy's assertion, he has not satisfied the procedural requirements for his motion and the Warden's response denying his request for compassionate release does not complete the exhaustion of his administrative remedy process. Elmy has clearly not yet appealed the Warden's April 17, 2020 response. Since Elmy states that he did not receive the Warden's response until May 29, 2020, he still had 20 days from his receipt of the response to appeal the Warden's decision. Thus, Elmy has not exhausted all of his BOP administrative remedies as required.

To the extent Elmy requests the court to direct the BOP to release him from prison to home confinement, or to amend his sentence to allow him to serve the remainder of his prison term in home confinement, due to COVID-19, his filing is construed as a motion for compassionate release under 18

---

[1] The court notes that in Luzerne County, where Elmy wishes to be placed on home confinement with his wife and children, as of July 16, 2020, there were 3,036 positive COVID-19 cases reported and 181 deaths. *See* PA Dept. of Health website.

U.S.C. §3582(c)(1)(A)(i), and it will be dismissed without prejudice for lack of jurisdiction due to his failure to exhaust his BOP administrative remedies.

To the extent Elmy is seeking the court to order the BOP to find him eligible for immediate home confinement designation under the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. 116-136, §12003, the court does not have authority to grant his request for relief and order the BOP to release him to home confinement.

## II. DISCUSSION[2]

In his present motion, (Docs. 57), defendant Elmy requests the court to order the BOP to immediately transfer him from FCI-Gilmer to home confinement and requests the court to allow him to serve the remainder of his 72-month prison sentence in home confinement due to the COVID-19 pandemic. The court construes Elmy's filing as a motion compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A). Elmy states that he is in danger of contracting the virus in the prison since the CDC safety measures

---

[2]Elmy is currently serving an aggregate 72-month prison sentence, after he pled guilty to Extortion Under Color of Right in violation of 18 U.S.C. §1951(a), and Possessing a Firearm in Furtherance of Drug Trafficking under 18 U.S.C. §924(c)(1)(A). Elmy was also ordered to be on an aggregate of 4-years of supervised release following the service of his prison sentence. (Doc. 40). The complete background of Elmy's case was stated in the court's January 8, 2020 memorandum denying his motion under 28 U.S.C. §2255. (*See also* Doc. 59 at 2-4).

Also, on April 30, 2020, the Third Circuit construed Elmy's notice of appeal regarding this court's memorandum, as a request for a certificate of appealability under 28 U.S.C. §2253(c)(1) and denied the request. (Doc. 56).

cannot be practiced and that if he contracts the virus he will be at risk of suffering severe complications due to his medical conditions. Based on these allegations, Elmy contends that there exists extraordinary and compelling circumstances warranting his release from prison to home confinement.[3]

In its brief in opposition, (Doc. 59 at 12-13), the government indicates that Elmy's request for compassionate release from prison to home confinement under the First Step Act, 18 U.S.C. §3582(c)(1)(A), should be dismissed because he has not exhausted his administrative remedies. The government states that "[t]he United States has confirmed with FCI Gilmore that on April 17, 2020, Elmy was reviewed for Compassionate

---

[3] Since the government included in its response of all of the safety measures implemented by the BOP in response to the COVID-19 virus, (Doc. 59 at 4-10), and since this court is well-aware of all of the safety measures implemented by the BOP, *see* Cordaro, 2020 WL 2084960, and since many of the measures are found on the BOP's website, they are not repeated. *See also* BOP website: www.bop.gov/coronavirus/index.jsp. The court has also reviewed the May 26, 2020 Memorandum from Ken Hyle, BOP Assistant Director/General Counsel to the Honorable Ricardo S. Martinez, Chair of the Judicial Conference Criminal Law Committee, regarding updated information from the Bureau of Prisons with respect to its response to the COVID-19 pandemic and about revised screening procedures for new inmates being confined in federal prisons to reduce the spread of the virus.

Also, the number of COVID-19 cases in a federal prison can be found at COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/. The government represents that as of May 26, 2020, there were 5 positive COVID-19 inmate cases out of the approximately 1522 inmates confined at FCI-Gilmer and no positive staff cases. (Doc. 59 at 9-10). FCI-Gilmer is listed on the BOP's website and, as of July 16, 2020, there are currently no staff or inmates with positive COVID-19, and six inmates had the virus and recovered.

Release/Reduction in sentence (although Elmy specifically requested release to home confinement), and was denied. Elmy's denial was based, in part, on his inability to demonstrate extraordinary or compelling circumstances. (*See* Exhibit 2, Warden's Response [Doc. 59-2]). Elmy did not appeal the Warden's decision dated April 17, 2020."

As stated, the Warden also advised Elmy that if he was dissatisfied with his response, he could file an appeal "via the Administrative Remedy Process" by submitting a form BP-9 within 20 days of his receipt of the response. (Doc. 59-2).

Insofar as Elmy is construed in his reply brief to contend that he has exhausted his BOP administrative remedies since he just recently received the response from the Warden denying his request for compassionate release, he is not correct since he has not yet appealed the response from the Warden. Also, since the Warden timely responded to Elmy's April 9, 2020 request on April 17, 2020, Elmy cannot directly file an action with the court without exhausting his administrative remedies. Only if the Warden fails to respond to the inmate's request within 30 days, can the inmate file his motion for compassionate release with the court without exhausting his BOP administrative remedies.

As the court in United States v. Smith, 2020 WL 2063417, *2 (N.D.Oh. April 29, 2020), explained:

> Smith has also failed to fully exhaust his administrative remedies with respect to his original motion. Because the Warden explicitly denied his 2019 request for compassionate release, Smith needed to exhaust

by appealing the Warden's decision. *See* 28 C.F.R. §542.15(a); *see also* B.O.P. Program Statement 5050.50 §571.63 (citing the Administrative Remedy Program appellate procedure as the proper method of administratively appealing a denied §3582(c)(1)(A)); *see, e.g.*, United States v. Brummett, 2020 WL 1492763, at *1-2 (E.D.Ky. Mar. 27, 2020)(denying request for compassionate release due to COVID-19 for failure to exhaust because inmate did not appeal warden's denial of his request for a reduction in sentence).

Recently, in United States v. Early, 2020 WL 2572276, *3 (W.D.Pa. May 21, 2020), the court considered a similar exhaustion issue as presented in the instant case, and stated: "Warden Williams responded to Defendant's request [for compassionate Release/Reduction in Sentence] within 30 days of receipt. Consequently, Defendant is obligated to complete the administrative appeal process. Therefore, this Court finds that Defendant has failed to exhaust his administrative remedies." The court in Early, *id*., also stated that the court may not waive the exhaustion requirement and that "exhaustion of [defendant's] administrative remedies is mandatory." (citing United States v. Raia, 954 F.3d 594 (3d Cir. 2020)). "In Raia, the Court of Appeals emphasized the BOP's statutory role and extensive efforts to control the spread of Covid-19, and held that the 'exhaustion requirement takes on added – and critical – importance.'" *Id*. (quoting Raia, 954 F.3d at 597). "The BOP is in the best position to consider the myriad of factors necessary in rendering a decision." *Id*.

Also, to the extent that Elmy, just like the defendant in the Early case, *id*. at *2, is deemed as contending that he has exhausted his administrative

remedies because the Warden formally denied his request within the 30-day time frame provided for in the First Step Act, he is not correct.

The court in Early, *id.* at *3, explained:

> Defendant's reading of the statute is misplaced. Courts have interpreted the statue to mean that an inmate must fully exhaust his administrative remedies unless his or her warden does not respond to the inmate's request within 30 days. *See* United States v. Nance, 2020 WL 114195, at *2 (W.D. Va. Jan. 10, 2020). In other words, a defendant must wait to file a motion with this Court until either his administrative request related to compassionate release is denied and he fully exhausts all administrative rights to appeal or thirty days have passed from the date he made the application *with no response from the warden*, whichever occurs first. *Id.* ("[C]ases indicate that this statutory exhaustion requirement has been interpreted to excuse full exhaustion of administrative remedies only if 30 days have elapsed without any response by the Bureau of Prisons to the inmate's request."), citing, United States v. Bolino, 2020 WL 32461, at *1 (E.D.N.Y. Jan. 2, 2020). *See also*, United States v. Bevans-Silva, 2020 WL 2475079 (S.D. Ga. May 13, 2020); United States v. Samuels, 2020 WL 2499545, at *2 (W.D. La. May 13, 2020); United States v. McCallister, 2020 WL 1940741, at *2 (W.D. La. April 21, 2020); United States v. Rodriguez, ––– F.Supp.3d –––, –––, 2020 WL 1627331, at *3 (E.D. Pa. Apr. 1, 2020) ("Under the First Step Act ... it is possible for inmates to file compassionate-release motions—under the 30-day lapse provision— when their warden never responds to their request for relief."); United States v. Mattingley, 2020 WL 974874, at *3 (W.D. Va. Feb. 28, 2020); United States v. Keith, 2019 WL 6617403, at *1 (W.D. Okla. Dec. 5, 2019)(To exhaust administrative remedies, a defendant "first submits his request to BOP and either (1) complete the administrative appeal process, if BOP denies his request; or (2) wait 30 days from BOP's receipt of his request to deem its lack of response a denial of his request."). [District Court criminal nos. omitted].

In United States v. Solomon, 2020 WL 2768897, *3 (W.D.Pa. May 28, 2020), the court stated, "[c]ourts have interpreted [18 U.S.C. §3582(c)(1)(A)]

9

to mean that an inmate must fully exhaust his administrative remedies unless his or her warden does not respond to the inmate's request within 30 days." (citing Early, 2020 WL 2572276, at *3). As such, Elmy must wait to file a motion with the court after he fully exhausts all administrative rights to appeal the Warden's denial of his administrative request for compassionate release since the Warden responded to his request within 30 days from the date he submitted his request. *See id.* (citing Early, 2020 WL 2572276, at *3).

In the present case, just as in Early, 2020 WL 2572276, at *3, "Warden [Hudgins] responded to [Elmy's] [April 9, 2020] request within 30 days of receipt [i.e., on April 17, 2020]." (Doc. 59-2). Thus, Elmy "is obligated to complete the administrative appeal process", and the court finds that "[he] has failed to exhaust his administrative remedies." *Id.*

Thus, it is clear that Elmy has not exhausted all of his BOP administrative remedies prior to his instant filing. Since Hudgins timely denied Elmy's request for release to home confinement, Elmy must still file an appeal with the BOP Regional Director, within 20 calendar days of his receipt of the Warden's response. 28 C.F.R. §542.15(a). Then if the Regional Director denies his appeal, Elmy must appeal that decision to the BOP General Counsel, within 30 calendar days from the date the Regional Director signed the response. *Id.* The appeal to the General Counsel is the final administrative appeal in the process. *Id. See also* Early, 2020 WL 2572276, *2 (citing 28 C.F.R. §542.15(a)).

In short, as in Early and Solomon, since the Warden of FCI-Gilmer responded to Elmy's request for compassionate release within 30 days of receipt, "[]he must exhaust h[is] administrative remedies before []he may seek relief in this Court." Solomon, 2020 WL 2768897, *3-4.

In the present case, similar to Early, Solomon, and Cordaro, 2020 WL 2084960, *5, the court finds that Elmy must exhaust all of his available BOP administrative remedies challenging the Warden's denial of his release to home confinement. As in Cordaro, where the inmate was denied release by Finley on April 18, 2020, this court found that the inmate must still pursue his remaining BOP administrative remedies to challenge the decision denying him release to home confinement. Also, as in Cordaro, 2020 WL 2084960, *5, "[t]he circumstances of [Stroman's] case fit squarely within the purposes of the exhaustion requirement." (citation omitted). *See also* Early, 2020 WL 2572276, *4 ("The fact remains, however, that Defendant must exhaust his administrative remedies before he may seek relief in this Court.").

The court finds that even if the exceptions to the exhaustion requirement applied in this case, and they do not since "exhaustion of [defendant's] administrative remedies is mandatory", Early, 2020 WL 2572276, *3, none exist especially since, as noted, there are presently no positive cases of the COVID-19 virus at FCI-Gilmer as of June 9, 2020.

Before the court will review the April 17, 2020 decision of Warden Hudgins denying Elmy home confinement placement due to the COVID-19 virus, Elmy must exhaust all of BOP his administrative remedies.

11

As such, to the extent Elmy's motion is one for compassionate release from prison to home confinement under, 18 U.S.C. §3582(c)(1)(A)(i), as amended by the First Step Act ("FSA"), Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), it will be dismissed without prejudice for failure to exhaust all of his BOP administrative remedies. *See* Cordaro, 2020 WL 2084960, *5; Early, 2020 WL 2572276, *4.

Further, Elmy claims that due to the threat that he may contract the COVID-19 virus at FCI-Gilmer and based on his underlying medical conditions and his age, he qualifies to be immediately released to home confinement based on the CARES Act and pursuant to the FSA, 18 U.S.C. §3582(c)(1)(A). "As amended by the First Step Act, 18 U.S.C. §3582(c)(1)(A) authorizes courts to modify a criminal defendant's sentence for 'extraordinary and compelling reasons' 'upon motion of the Director of the Bureau of Prisons' or 'upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.'" United States v. Feiling, 2020 WL 1821457, *4 (E.D.Va. April 10, 2020). As mentioned, Elmy filed a request for a sentence reduction with the Warden pursuant to the First Step Act on April 9, 2020 and he has not yet appealed the Warden's April 17, 2020 response. Thus, he has not exhausted all of his BOP administrative remedies with respect to his request for compassionate release.

As such, Elmy's motion for compassionate release must be dismissed for lack of jurisdiction since he has not exhausted his administrative remedies under §3582(c)(1)(A), "which requires that a defendant seeking compassionate release present [his] application to the BOP and then either (1) administratively appeal an adverse result if the BOP does not agree that [his] sentence should be modified, or (2) wait for 30 days to pass." United States v. Zukerman, 2020 WL 1659880, *2 (S.D.N.Y. April 3, 2020). *See also* United States v. Raia, 954 F.3d 594 (3d Cir. April 2, 2020); United States v. Smith, 2020 WL 2063417, *2 (N.D.Oh. April 29, 2020) (court held that defendant failed to fully exhaust his administrative remedies with respect to his motion for compassionate release "[b]ecause the Warden explicitly denied his [] request, [defendant] needed to exhaust by appealing the Warden's decision." (citing 28 C.F.R. §542.15(a); B.O.P. Program Statement 5050.50 §571.63 (citing the Administrative Remedy Program appellate procedure as the proper method of administratively appealing a denied §3582(c)(1)(A)); United States v. Brummett, 2020 WL 1492763, at *1-2 (E.D. Ky. Mar. 27, 2020) (denying request for compassionate release due to COVID-19 for failure to exhaust because inmate did not appeal warden's denial of his request for a reduction in sentence)); United States v. Edwards, 2020 WL 1987288 (M.D.Tn. April 27, 2020) (Court denied motion for compassionate release without prejudice until the exhaustion requirement of 18 U.S.C. §3582(c)(1)(A(i) is satisfied); United States v. Early, 2020 WL

13

2572276 (W.D.Pa. May 21, 2020). Here, Elmy has not exhausted all of his BOP administrative remedies as required prior to his instant filing.

Secondly, the court cannot yet determine if Elmy has demonstrated that "extraordinary and compelling reasons" warrant a reduction of his sentence, since he has not exhausted his administrative remedies. *See* Zukerman, 2020 WL 1659880, *2 ("in order to be entitled to relief under 18 U.S.C. §3582(c)(1)(A)(i), [defendant] must both meet the exhaustion requirement and demonstrate that 'extraordinary and compelling reasons' warrant a reduction of [her] sentence."); Raia, 954 F.3d at 597 ("The First Step Act empowers criminal defendants to request compassionate release for 'extraordinary and compelling reasons'" after the defendant exhausts administrative remedies with the BOP.) (citing 18 U.S.C §3582(c)(1)(A)(i)). The Third Circuit in Raia, *id.*, also held that defendant's failure to comply with §3582(c)(1)(A)'s exhaustion requirement "presents a glaring roadblock foreclosing compassionate release at this point."

As the Third Circuit in Raia, 954 F.3d at 597, explained, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." (citation omitted). *See also* Feiling, 2020 WL 1821457, *5 ("the Court agree[d] with the Third Circuit [in Raia] and the district courts cited [in its decision] and will join them in holding that the mere existence of COVID-19 among the prison population and an

inmate's susceptibility to it do not justify waiver of the administrative exhaustion requirement under §3582(c)(1)(A).") (string citations omitted of several cases finding that since defendant failed to exhaust the administrative remedies with BOP, the Court does not possess authority to grant relief under §3582(c)(1)(A)(i), even if based on COVID-19, and that §3582(c)(1)(A) provided no authority to waive the exhaustion requirement); Smith, *supra* (same); Edwards, 2020 WL 1987288, *10 n.6 (court noted that the Third Circuit's conclusion in Raia that the exhaustion requirement was "non-waivable" and that the failure to exhaust administrative remedies forecloses compassionate release was not "mere 'dicta'"). The court in Early, 2020 WL 2572276, *3, also recently stated that the court may not waive the exhaustion requirement and that "exhaustion of [defendant's] administrative remedies is mandatory." (citing United States v. Raia, 954 F.3d 594 (3d Cir. 2020)).

     Moreover, the Third Circuit in Raia, 954 F.3d at 597, stated, "[g]iven BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with §3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *See also* Feiling, 2020 WL 1821457, *7 ("Because Defendant has failed to exhaust administrative remedies under §3582(c)(1)(A), the Court lacks authority to grant a sentence modification under that provision."); United States v. Soto, 2020 WL 1875147, *1 (D.Co. April 15, 2020) ("18 U.S.C. §3582(c)(1)(A) imposes a requirement on a defendant requesting compassionate release to exhaust all administrative

rights before seeking such relief.") (citation omitted); United States v. Boyles, 2020 WL 1819887, *2 (D.KS. April 10, 2020) (the court held that since defendant did not exhaust his BOP administrative remedies as required, "it [did] not decide whether he has established that there are 'extraordinary and compelling reasons' why he should be released."); United States v. Wright, 2020 WL 1976828 (W.D.La. April 24, 2020) (court did not need to address whether inmate demonstrated extraordinary and compelling reasons to warrant his release to home confinement under the provisions of the compassionate release statute "due to the grave dangers presented by COVID-19" since inmate did not exhaust his administrative remedies under 18 U.S.C. §3852(c)(1)(A), which is mandatory and "the Court has no power to waive the exhaustion requirement."); United States v. Edwards, 2020 WL 1987288 (MD.Tn. April 27, 2020) (after an extensive review of recent cases filed in light to the COVID-19 pandemic, the court concluded that "[it] cannot consider the Motion [for compassionate release] until the exhaustion requirement of 18 U.S.C. §3582(c)(1)(A(i) is satisfied", and denied the Motion without prejudice to refiled it once exhaustion was completed); United States v. Johnson, ---F.3d---, 2020 WL 1663360, *6 (D.Md. April 3, 2020) (Court held that since prisoner seeking relief under §3582(c)(1)(A) did not fully exhaust his administrative remedies, it lacked jurisdiction over motion and would not consider whether prisoner presented "extraordinary and compelling reasons" warranting his release from prison until exhaustion was completed).

Thus, Elmy's motion for compassionate release must be dismissed for lack of jurisdiction since he has clearly not exhausted all of his administrative remedies under §3582(c)(1)(A).

Additionally, insofar as Elmy is construed as relying on the CARES Act, which was signed into law on March 27, 2020, as the basis for his release to home confinement, such reliance is misplaced. Any such request by Elmy under the CARES Act will be denied since the court has no authority to direct the BOP to place him in home confinement and the determination of which defendant qualifies for home confinement under the CARES Act is with the BOP Director.

As the court in United States v. Sawicz, 2020 WL 1815851, *1 (E.D.N.Y. April 10, 2020), recently explained:

> [The] CARES Act expanded the maximum amount of time that a prisoner may spend in home confinement: "if the Attorney General finds that emergency conditions will materially affect the functioning of the [BOP], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement ...." CARES Act §12003(b), Pub. L. No. 116-136, 134 Stat. 281 (2020). Attorney General William Barr made the requisite "finding that emergency conditions are materially affecting the functioning of the Bureau of Prisons" on April 3, 2020, thereby triggering the BOP's authority to expand the amount of time that a prisoner may spend in home confinement.

The determination of which inmates qualify for home confinement under the CARES Act is with the BOP Director. See United States v. Doshi, 2020 WL 1527186, *1 (E.D.Mi. March 31, 2020) (The CARES Act "temporarily permits the Attorney General to 'lengthen the maximum amount

17

of time for which [it] is authorized to place a prisoner in home confinement' under §3624(c)(2)", and "the authority to make this determination is squarely allocated to the Attorney General, under whose authority is the Bureau of Prisons."). In fact, the CARES Act "does not mandate home confinement for any class of inmate." Valenta v. Ortiz, 2020 WL 1814825, *1 (D.N.J. April 9, 2020).

Under the CARES Act "Congress sought to address the spread of the coronavirus in prisons by permitting BOP to expand the use of home confinement under [Section 602 of the First Step Act] §3624(c)(2)." Furando, 2020 WL 1922357, *2 (citing Pub. L. No. 116-36, §12003(b)(2)). "Upon direction of the Attorney General, Section 12003(b)(2) of the CARES Act temporarily suspends the limitation of home confinement to the shorter of 10 percent of the inmate's sentence or 6 months." Id.

Thus, the CARES Act provides that if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP, as he did on April 3, 2020,[4] the BOP Director may increase the maximum amount of time that a prisoner may spend in home confinement under the first sentence of 18 U.S.C. §3624(c)(2). Id. at *3; Cruz, 2020 WL 1904476, *4.

As such, "the jurisdiction of [a home confinement] determination [under the CARES Act] is with the Director of the Bureau of Prisons." Id.; Cordaro, 2020 WL 2084960, *6.

---

[4] See Furando, 2020 WL 1922357, *2-3 (court summarized Barr's Memoranda).

### III.     CONCLUSION

Insofar as Elmy's Motion is for Compassionate Release or for Reduction of Sentence and for Immediate Release to Home Confinement related to the COVID-19 pandemic, **(Doc. 57)**, it will be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction due to his failure to exhaust his BOP administrative remedies under §3582(c)(1)(A)(i). Insofar as Elmy is construed as seeking this court to compel the BOP to find that he is eligible for home confinement designation under the CARES Act, the court will **DISMISS** it since the authority to make this determination lies with the BOP Director and not the court. An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: August 3, 2020**
16-143-02